UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

SHANNON FRANKLIN SMITH,                          Case No. DK 06-06465
                                                 Chapter 7
            Debtor.                              Hon. Scott W. Dales

_____/

COMFORT CONTROL SUPPLY                           Adv. Pro. No. 07-80005
COMPANY, INC.,

            Plaintiff,

v.

SHANNON FRANKLIN SMITH,

            Defendant.

_____/

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

On February 9, 2007, Comfort Control Supply Company, Inc. (the "Plaintiff") obtained a

non-dischargeable consent judgment (the "Judgment," DN 5) against Shannon Franklin Smith

(the "Defendant") pursuant to 11 U.S.C. § 523(a)(4).  This Opinion resolves a controversy

arising from the Plaintiff's post-judgment collection proceedings against the Defendant, whose

obligations under the Judgment remain unsatisfied.

After obtaining the Judgment, the Plaintiff had difficulty collecting from the Defendant,

but the parties eventually entered into a Payment Agreement requiring the Defendant to make

installment payments. *See* Comfort Control Supply Company, Inc.'s Response And Brief In

Opposition To Shannon Franklin Smith's Objections To Garnishment (the "Response," DN 47),

at Exh. D. While he was employed, the Defendant made payments pursuant to the Payment Agreement. Eventually, however, he lost his job and ceased making full payments, contrary to the Payment Agreement. Sometime after consenting to the entry of the Judgment, the Defendant left Michigan, and attempted to begin a new life in Colorado.

On or about November 2, 2010, the Plaintiff served a Request and Writ for Garnishment (the "Writ") on JPMorgan Chase Bank, N.A. (the "Bank"), at 445 E. 124th Avenue, Denver, Colorado. The Defendant, now *pro se*, filed an Objection to Garnishment and Notice of Hearing (the "Objection," DN 40) because the Bank, as directed in the Writ, put a hold or freeze on all of his deposit accounts. The court held a hearing to consider the Writ and the Objection on February 9, 2011 in Kalamazoo, Michigan. According to the Plaintiff, the Defendant still owes $28,691.38 on the Judgment, an amount well in excess of the funds on deposit at the Bank.

At the hearing, the Defendant and the attorney for the Plaintiff appeared. The court heard testimony from the Defendant and admitted one exhibit -- summary statements of three deposit accounts at the Bank. *See* Trial Exh. A. The statements show, among other things, that the Defendant receives unemployment benefits by direct deposit into one of the accounts. He testified that he has no income beyond his unemployment benefits, though he is attempting to start a new business under the name "Smith Mechanical, Inc."[1]

In support of his Objection, the Defendant argues that, in Colorado, unemployment benefits are exempt from garnishment. The Plaintiff, in contrast, argues that Colorado law does not apply to a judgment entered by a federal court sitting in Michigan. At the hearing, the court suggested that Colorado may have an interest in applying its law, given that the Defendant is now a Colorado domiciliary, and given that the funds on deposit evidently originated from

---

[1] By separate order, the court denied the Plaintiff's motion for default judgment against Smith Mechanical, Inc., as garnishee-defendant in these post-judgment proceedings.

Colorado's unemployment insurance program. The court took a recess to permit the parties to discuss their dispute, and consider the Defendant's exemption argument.

After this recess, the court resumed the hearing, and the Plaintiff cited Michigan Supreme Court authority regarding choice-of-law principles, which provides in relevant part as follows:

> [W]e will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be over-come. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274 (1997) *(quoting Olmstead v. Anderson*, 428 Mich. 1, 24, 29-30 (1987))*. Recognizing that enforcement of a federal judgment depends to a large extent on state procedures, *see* Fed. R. Civ. P. 69, the Plaintiff argues that Michigan's interest in enforcing its own judgments requires the court to apply the forum's law in garnishment proceedings involving unemployment benefits (and proceeds of benefits) that a Colorado domiciliary receives, in Colorado, pursuant to Colorado's unemployment insurance program. The court disagrees.

First, it is clear that Colorado has an interest in having its unemployment benefit exemption law applied to the Defendant because he resides there. Second, the Defendant deposited the funds at his bank in Colorado. Third, Colorado is the source of the funds the Plaintiff is attempting to garnish and the Colorado legislature expressed its intent that each eligible individual who is unemployed should receive a full award of benefits. *See* C.R.S.A. § 8-73-108(1)(a). Colorado has an interest in avoiding economic insecurity due to unemployment among its people. In addition, Colorado has a substantial interest in protecting public assistance,

Page 3 of 8

maintaining its residents' purchasing power, and limiting the "social consequences of poor relief assistance." *See* C.R.S.A. § 8-70-102.

Colorado's General Assembly enacted the Colorado Employment Security Act for "the public good and the general welfare of the citizens" of Colorado, and the State set aside unemployment reserves to be used for this purpose. *Id.* Therefore, the court finds that Colorado does have an interest in having its law applied to protect the Defendant, who now lives there.

The Plaintiff cited *USAA Life Ins. Co. v. The Conrad T. Coen Revocable Living Trust*, 2010 WL 5464261, slip op. (E.D. Mich. Dec. 30, 2010), but that case is not persuasive. More specifically, Judge Duggan properly applied Michigan law after determining that Texas had no interest in having its law applied because the supposed beneficiary of the Texas exemption law was not a Texas resident. Here, the proponent of the Colorado exemption statute resides in Colorado.

For these reasons, the court finds that Colorado's specific interest in protecting unemployment insurance benefits from execution overrides Michigan's general interest in enforcing judgments. Consequently, the court will apply Colorado law, recognizing that the Defendant's unemployment benefits are exempt, but only to the extent they are protected under Colorado law.

The exemption statute the Defendant cited during the hearing provides in relevant part as follows:

> . . . rights to [unemployment] benefits shall be exempt from levy, execution, attachment, or any other remedy provided for the collection of debt. Benefits received by any individual, so long as they are not mingled with other funds

Page 5 of 8

of the recipient, shall be exempt from any remedy for the collection of all debts . . .

C.R.S.A. § 8-80-103. The statute, therefore, distinguishes between the right to receive benefits, on the one hand, and the benefits actually received, on the other. The former are absolutely exempt, but the latter are exempt only "so long as they are not mingled with other funds of the recipient . . ." *Id.*

The court could find no Colorado authority regarding whether the unemployment benefits when mingled with other funds lose their exempt status in total, or whether a judgment debtor may use tracing principles to preserve the exemption. Therefore, the court will take into account the remedial nature of the Colorado statute, relying on the well-established canon of statutory interpretation to construe the protection broadly, rather than narrowly. *Watson v. Public Service Co.*, 207 P.3d 860, 864 (Colo. App. 2008) (*citing Colo. & S. Ry. Co. v. State R.R. Comm'n of Colo.*, 54 Colo. 64, 77, 129 P. 506, 512 (1912) (where an act is remedial, it will be liberally construed to accomplish its objective)).

Other states with the identical or similar exemption language in various statutes have found that their legislatures intended to preserve the exempt status of earnings commingled with nonexempt funds, and that commingled funds lose their exempt status only if tracing is not possible. *See*, *e.g.*, *Christensen v. Pack (In re Christensen)*, 122 Nev. 1309 (2006) (in Nevada, the legislature intended to preserve the exempt status of earnings that are commingled with nonexempt funds under NRS 21.090(1)(g)); *In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006) (under Illinois law, debtor's commingling of exempt and nonexempt funds does not transmute the exempt funds into nonexempt assets; however, exempt funds must be reasonably traceable to retain their exempt status); *In re Lubecki*, 332 B.R. 256, 260 (Bankr. W.D. N.Y.

2005) (under New York law, commingling of exempt proceeds with nonexempt assets does not preclude tracing of exempt status to appropriate portion of the common fund); *In re Green*, 178 B.R. 533, 537 (Bankr. M.D. Fla. 1995) (commingling of nonexempt interest paid by bank on funds from settlement of Chapter 7 debtor's workers' compensation case with exempt settlement proceeds did not affect exempt status of settlement proceeds where the amount of interest was known); *In re Schlein*, 114 B.R. 780, 784 (Bankr. M.D. Fla. 1990) (debtor not entitled to wage exemption due to his failure to trace and properly identify the funds deposited into his checking account).

The Defendant testified that he has three bank accounts, reflected on Exhibit A: a checking account in his name into which the unemployment benefits were directly deposited (Account #7891); another checking account he shared with his girlfriend, which they used for paying their living expenses (Account #1310); and a savings account he shared with his girlfriend that the Bank required him to open with one of the checking accounts (Account #8014). The Plaintiff cross-examined the Defendant, but offered no formal evidence at the garnishment hearing, except that the parties agreed the court could consider the exhibits attached to Plaintiff's Response.

In Account #7891, it is clear that all deposits, except four, were directly deposited into this account as unemployment benefits. According to the Bank's garnishee disclosure, there was $380.38 on deposit in that account, when the Bank received the Writ.  All funds in this account are exempt except $119.00.[2] Therefore, the funds on deposit in Account #7891 are exempt to the extent of $261.38.

---

[2] Two of the four deposits, occurring on August 16, 2010 for $20.00 and August 24, 2010 for $25.00, came from the Defendant's savings account (Account #8014), which he credibly testified, without contradiction, included only

Similarly, the Defendant testified that all funds in Account #8014 (the savings account) were solely derived from his unemployment benefits.  The court accepts this testimony, and finds that the $25.00 on deposit in this account are exempt.

Account #1310, titled in the names of the Defendant and his girlfriend, is admittedly composed of comingled funds. Because the evidence does not permit the court to trace the Defendant's unemployment benefits remaining on deposit when the Bank received the Writ, all monies in this account are not exempt, and are subject to the Writ.[3]

The court understands that, in accordance with Michigan's garnishment rules, the Bank may have remitted the funds to the Plaintiff. *See* M.C.R. 3.101(J)(1).  In view of the foregoing, the court will direct the Plaintiff, or the Bank as the case may be, to return the exempt portion of these funds to the Defendant.

Finally, as noted above, *supra* at n.1, the court has declined to enter default judgment against Smith Mechanical, Inc., which means that the Plaintiff will likely have difficulty enforcing the Judgment against that entity as a garnishee defendant in this court in the future.  In addition, the Defendant reported that he travelled over 1,100 miles from Colorado to attend the garnishment hearing, presumably using money for travel costs that might otherwise have been devoted to repaying the Judgment, and taking time away from work (or looking for work).

---

proceeds of his Colorado unemployment benefits.  Those deposits are also exempt because they are traceable to unemployment benefits. The final two deposits, of $20.00 on July 1, 2010 and $99.00 on November 18, 2010, are not exempt because they are from either an unknown source, or Account #1310, which the Defendant testified was an account he shared with his girlfriend.

[3] The documentary evidence consists of a summary of the account, rather than the complete statements showing withdrawals and intermediate balances.  Therefore, even accepting the Defendant's testimony that he and his girlfriend equally funded this account, the court cannot say (using usual tracing principles) whether his exempt funds remained on deposit when the Bank received the Writ, or whether his funds had been exhausted by paying joint living expenses, and his girlfriend's funds remained on deposit at the relevant time.  Given the court's decision to apply tracing principles, the outcome depends upon timing of deposits and withdrawals -- a calculation more involved than simply splitting the account in half.

Wasting either resource benefits neither party. Under the circumstances, the court encourages the Plaintiff to consider domesticating the Judgment in Colorado pursuant to the Uniform Enforcement of Foreign Judgments Act, C.R.S.A. § 13-53-101, or 28 U.S.C. § 1963. At some point, the court may conclude that enforcing the Judgment in Michigan against a Defendant who has moved to Colorado, or against property located in Colorado, is inequitable or improvident. Domesticating the Judgment may avoid expense and inconvenience.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Objection is SUSTAINED in part, and OVERRULED in part;

2. The Plaintiff, or the Bank, shall remit to the Defendant, forthwith, $286.38 in exempt funds;

3. The Plaintiff may retain the non-exempt balance of funds on deposit at the time the Bank received the Writ.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Charles A. Lawler, Esq., Matthew T. Smith, Esq., Brian P. Lick, Esq., and Shannon Franklin Smith by first class mail addressed to him at 7349 Maybeck View, Peyton, CO 80831.

**END OF ORDER**

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: February 18, 2011**